[No. 35449.   Department One.   December 29, 1960.]

LEO K. SANDERS *et al., Appellants,* ETHEL A. ERICKSON *et al.,*
*Plaintiffs,* v. E-Z PARK, INC., *et al., Respondents.*[1]

*Keith, Winston & Repsold (Leo J. Driscoll, of* counsel),
for appellants.

*Gordon E. Cornelius, Del Cary Smith,* and *Del Cary*
*Smith, Jr.,* for respondents.

MALLERY, J.—This is a stockholders' derivative action
against the corporate officers and directors of the Pigeon
Hole Parking, Inc. (hereinafter referred to as Pigeon Hole),
seeking rescission of its purchase of all the assets of the
E-Z Park, Inc. (hereinafter referred to as E-Z Park). The
leading spirits in this litigation are the brothers Sanders—
Leo heading the dissident minority stockholder group of
Pigeon Hole and Vaughn representing the majority stock-
holders.

[1] Reported in 358 P. (2d) 138.

Prior to 1950, the Sanders brothers invented and patented a device for the mechanical parking of automobiles. They proceeded to incorporate and manufacture their invention. Simply stated, it consisted of a vertical framework of steel parking stalls and a movable elevator for lifting and placing automobiles in them. The "pigeon holes" were in banks so situated that the parked automobiles were side by side facing across the lot. The entire unit required a lot fifty feet wide.

The corporation prospered under the direction of the Sanders brothers, Vaughn serving as president and general manager and Leo as vice-president in charge of engineering. It is considered one of the leaders in the field of mechanical parking, having sold some sixty units in the United States, Canada, and Venezuela.

In 1955, the defendant Fred Winkler, who held a Pigeon Hole franchise for Seattle and King county, wanted to install a Pigeon Hole device on a lot only thirty feet in width. To accomplish this, it was necessary to invent a variation of the device which could be fitted into such a space. He invented one which accomplished his purpose by parking automobiles end to end instead of side by side and facing lengthwise on the lot rather than across it. He took this invention to Vaughn Sanders, who agreed to collaborate with him in promoting it. Vaughn consulted Lawrence A. Bogar, a staff engineer for Pigeon Hole, on Winkler's behalf and persuaded him as to the merit of Winkler's invention.

The three men, at the instigation of Winkler and for the purpose of promoting the invention, incorporated in Nevada under the name of E-Z Park, Inc. The corporation capitalized on its "connections" with Pigeon Hole by utilizing the skill and experience of Pigeon Hole employees. Plans, drawings, and patent applications were prepared by them, *but not during Pigeon Hole working hours.* There followed a protracted series of patent applications and rejections, and no final determination has, as yet, been made as to the patentability of the Winkler invention.

Early in 1956, Vaughn Sanders and Winkler went to The Peters Company, the exclusive manufacturing agent of

Pigeon Hole Parking, Inc., and entered into a verbal agreement giving The Peters Company the exclusive right to build the first ten or fifteen machines in return for their performance of the engineering work on the Winkler invention. Vaughn Sanders estimated this engineering work would be worth seventy to eighty thousand dollars. Winkler estimated that his services, for which he received no compensation, would have cost a stranger twenty-five to thirty thousand dollars. Bogar estimated that the planning work done under his direction was worth seventy-five hundred to ten thousand dollars. No one could make use of the invention, whether patentable or not, without incurring these items of cost. However, after they were incurred, the invention could be put to practical use without a patent. Thus, patentability was not the sole criterion of value.

On February 14, 1958, Vaughn Sanders proposed to the board of directors of Pigeon Hole that it buy out the assets of E-Z Park, which consisted of the engineered but unpatented invention, by exchanging one hundred two thousand shares of Pigeon Hole stock for all of the outstanding shares of E-Z Park stock. The five-man board of Pigeon Hole approved the purchase by a vote of three to two, Vaughn Sanders casting the deciding vote. This voidable action lost is significance in the light of subsequent events.

At the annual stockholders meeting in May, 1958, the brothers Sanders were struggling for control of the corporation. A new board of directors was to be elected. Vaughn Sanders won re-election as president, and the two directors who had voted for acquisition of the assets of E-Z Park were also re-elected. The two dissident directors of Leo's faction were replaced by new directors who favored the acquisition.

On August 1, 1958, the new board met and unanimously ratified the purchase of Winkler's invention through acquisition of E-Z Park stock. Vaughn Sanders abstained from voting on this occasion. At this same meeting, the board considered and rejected a letter from the dissident stockholders demanding that the transaction of E-Z Park be rescinded.

By this time, any possible fraudulent misrepresentations as to patentability were dissipated and the question of

patentability of Winkler's invention had been pretty well aired. The board considered the value to the corporation of the device as an unpatented invention. The record reveals that its value, as such, was considerable. There was evidence that Morton Chatkin, one of the controlling partners of Apollo Steel Company of Pittsburgh, had made an offer of one hundred twenty-five thousand dollars for the assets of E-Z Park.

Leo Sanders, representing the dissident minority stockholders, instituted this action to compel rescission of the purchase upon the theory that Vaughn's fraud as to patentability vitiated the action of the entire board.

The trial court did not agree and found for the defendants and dismissed the complaint with prejudice. Specifically, the court found: (1) that the transaction *as to the directors* was not fraudulent; (2) that it did not result in watering, diluting, or diminishing the value of the stock of Pigeon Hole Parking, Inc.; (3) that Vaughn Sanders did not breach his fiduciary duty; (4) that the assets of E-Z Park, Inc., had value approximating the price paid for them; and (5) that the assets of E-Z Park, Inc., did not belong to Pigeon Hole Parking, Inc., by reason of shop rights.

It is true that a particular director cannot vote on matters in which he has a personal financial interest. However, if he does, the action taken by the board is voidable only *(Tefft v. Schaefer,* 136 Wash. 302, 239 Pac. 837, 239 Pac. 1119) and may be ratified by the stockholders. Ballantine on Corporations (Rev. ed.) 176, § 71.

In the instant case, the stockholders met subsequent to the passing of the voidable resolution of purchase and elected a board of directors, who were specifically committed to the ratification of the purchase, which it did at the subsequent meeting of the board.

All of the allegations as to fraud in this case are directed against Vaughn Sanders. However, the alleged fraud was known by the board when it finally ratified the purchase without the participation of Vaughn as a director. While the board of directors of a corporation is bound to exercise reasonable business judgment, it is not the pre-

rogative of the minority stockholders to decide what is reasonable. Minority stockholders cannot exercise the discretion involved in guiding the operations of a corporation. *Goodwin v. Castleton,* 19 Wn. (2d) 748, 144 P. (2d) 725, 150 A. L. R. 859.

■ The board of directors felt, in this case, that the corporation was getting full value for the one hundred two thousand shares of its stock with which it purchased the Winkler invention from E-Z Park. The controversy as to fraud in the matter of patentability of the Winkler invention became moot when the board, supplied with knowledge as to patentability by Leo, still wanted to ratify the purchase.

The record herein supports the court's finding that Pigeon Hole Parking, Inc., did not acquire the Winkler invention by reason of shop rights.

The judgment is affirmed. The respondents will not recover the costs of printing their brief.

WEAVER, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.