[No. 2569-1.   Division One.   May 12, 1975.]

Nursing Home Building Corporation, *Appellant*, v. Phoebe DeHart, *Individually, Respondent.*

*Casey, Pruzan, Kovarik & Shulkin* and *Martin Godsil,* for appellant.

*Davis, Wright, Todd, Riese & Jones* and *Richard A. Derham,* for respondent.

SWANSON, J.—Nursing Home Building Corporation, doing business as Arden Nursing Home (hereinafter referred to as "the corporation"), appeals from a judgment which awarded it only $9,914.85 of its $121,865 claim based upon alleged fraudulent misappropriation of corporate funds by Richard L. and Phoebe DeHart, the former sole shareholders of the corporation.[1] In the event the judgment appealed from is reversed and modified, the DeHarts cross-appeal from the dismissal of their cross claim against Dr. Herbert P. Clausing and Dr. Glen E. Deer, from whom they had originally purchased the corporation and who received payments from the DeHarts.

The factual context in which this appeal arose is as follows: Two Seattle doctors, Dr. H. P. Clausing and Dr. G. E. Deer, were the sole owners of the corporation which in turn owned and operated the Arden Nursing Home located on Aurora Avenue in the city of Seattle. On January 20, 1970, the two doctors sold all of the outstanding stock (3,000 shares) of the corporation to the DeHarts on an installment contract for $700,000. The DeHarts made an initial down payment of $80,000 from their own resources and made subsequent payments on the stock purchase contract by checks totaling $34,089.64 drawn on the corporation checking account. In addition, as required by the terms of the stock purchase agreement, they transferred to Clausing and Deer a $29,099 account receivable asset of the corporation known as the "Southside Receivable." The payments from the corporate bank account and the transfer of the account receivable to Clausing and Deer were reflected in a loan account know as "Owner's Receivable." This account had a $45,563.45 loan balance due the corporation when the DeHarts were dispossessed of the nursing home in May 1971.

---

[1]Richard L. DeHart died on May 6, 1973, during the pendency of this action. An order dated August 14, 1973, was entered substituting Phoebe DeHart as personal representative of the estate of Richard L. DeHart as party defendant.

During the 15-month period of the DeHarts' management of the corporation, it had serious cash flow problems so that by March 1971, the corporation was unable to pay its creditors and keep current the payments on the building mortgage due the Bank of California as required by the sales contract. The DeHarts' breach of the mortgage obligation resulted in an action by Clausing and Deer to forfeit the stock purchase contract. *See Clausing v. DeHart,* 83 Wn.2d 70, 515 P.2d 982 (1973).

On August 6, 1971, Robert Thompson, who was named receiver pendente lite to manage the nursing home and to maintain the forfeiture action, sued the DeHarts to recover $121,865 in corporate funds he alleged were "fraudulently misappropriated" and diverted to the DeHarts' personal use and benefit. At the outset of this litigation, the receiver obtained a writ of attachment without notice or hearing to secure his claimed creditor's lien on the DeHarts' real estate. This procedure was upheld in *Thompson v. DeHart,* 84 Wn.2d 931, 530 P.2d 272 (1975). The receiver Thompson was discharged prior to the trial of this action but the corporation, which was once again owned by the original owners Clausing and Deer, remained as a party plaintiff. After a trial to the court in which the DeHarts conceded an obligation to reimburse the corporation for $9,914.85 of corporate funds used for personal purposes unrelated to any corporate benefit, judgment was entered in that amount, but the court denied the corporation's claim for additional funds allegedly "fraudulently misappropriated" as is reflected in the following conclusions of law:

> The business expenses, salary, fringe benefits and reimbursed expenses were reasonable and proper exercises of business judgment by the DeHarts except as set forth in Finding of Fact VII. [Finding of fact No. 7 contains the $9,914.85 item upon which judgment was rendered.]

Conclusion of law No. 2.

> The payments to Drs. Clausing and Deer were authorized by all shareholders and, in addition, Drs. Clausing,

Deer and the corporation ratified and accepted the payments. The corporation is not entitled to recover these payments from the DeHarts.

Conclusion of law No. 3.

The transfer of the Southside Receivable was pursuant to a contract which the corporation approved when Drs. Clausing and Deer controlled the corporation. In addition, the transfer was approved by the sole shareholders of the corporation at the time the transfer took place and was ratified and accepted by the present shareholders, Drs. Clausing and Deer. The corporation is not entitled to recover the value of the contract from the DeHarts.

Conclusion of law No. 4.

On appeal, the corporation contends the trial court erred in failing to enter judgment for $92,996.61 in additional funds which it contends were misappropriated by the DeHarts. The corporation assigns error to the quoted conclusions of law and to these findings of fact:

All other disbursements presented to the Court were proper business expenses.

Finding of fact No. 12.

The funds which would have been used for taxes were applied to other business expenses, such as staff salaries and trade accounts necessary to keep the nursing home open and provide patient care.

Finding of fact No. 14, in part. The corporation's assignments of error focus primarily upon three categories of alleged misappropriation of funds: (1) Loans by the corporation to the DeHarts as reflected by the $45,563.45 balance shown in the Owner's Receivable; (2) corporate funds totaling $21,000 used in the management of the corporation; and (3) corporate funds totaling $26,433.16 which the corporation claims should have been used by the DeHarts to pay federal taxes.

In considering the first category, we note that the $45,563.45 loan balance item primarily consists of two items, (1) the corporate funds used to make the installment

payments to Clausing and Deer on the stock purchase contract, and (2) the transfer to Clausing and Deer pursuant to the stock purchase contract of the Southside Receivable. The corporation asserts that such payments from corporate funds or by transfer of corporate assets amounts to money borrowed from the corporation for a personal obligation which must be repaid. As to the first item, the court found in an unchallenged finding that the obligation to make the installment payments was the personal obligation of the DeHarts but also found that

[i]t was understood by all parties at the time the contract was signed that payments would probably come from the earnings of the business distributed to DeHarts if possible.

Finding of fact No. 9, in part. In addition, the court entered the following significant findings to which no error is assigned:

Payments were made to Drs. Clausing and Deer by checks dated April 16, 1970, of $5,000.00 each, drawn on the account of Arden Nursing Home at The Bank of California; and checks dated January 20, 1971, of $7,500.00 each, February 8, 1971, of $2,272.41 each, and March 3, 1971, of $4,544.82 total, all drawn on the account of Nursing Home Building Corporation, d/b/a Arden Nursing Home at Pacific National Bank, Everett Banking Center. Drs. Clausing and Deer received and cashed all such checks. On March 30, 1971, Dr. Clausing wrote DeHarts formally demanding that all future payments be paid by DeHarts from their personal funds.

Finding of fact No. 10.

All existing shareholders of the corporation, being the DeHarts, approved and ratified the payment of the above amounts to Drs. Clausing and Deer from corporate funds.

Finding of fact No. 11. The trial court concluded that because all shareholders of the corporation approved the payments and Clausing and Deer ratified and accepted them, there can be no recovery by the corporation. We agree.

The corporation argues that the receipt by Clausing and Deer of these payments could not operate as an estoppel

against it because they had no control over it but were merely creditors of the DeHarts with a pledgee's interest in the corporate stock.[2] Thus, it is the corporation's theory of recovery that despite the facts that the DeHarts were the sole owners of the corporation when the payments were made and that Clausing and Deer, the recipients of the funds, had regained sole ownership of the corporation at the time of trial, the corporation's identity remained separate and apart from that of the individual stockholders and therefore it could recover the payments from the DeHarts through its right to an accounting and repayment of loans. In support of this argument, the corporation cites the following rule governing the conduct of corporate officers:

> As a general rule, the corporate officers or agents have no right or authority to use, divert, or appropriate corporate funds or property for their own individual interests or purposes, and they are responsible for the wrongful use or diversion of the corporate property and are accountable for any profits made thereby. Thus, it is generally held that a corporate officer has no authority to use corporate funds for payment of his own debts. . . .

(Footnotes omitted.) 19 Am. Jur. 2d *Corporations* § 1235 (1965).

Further, the corporation contends that ownership by a borrower of all the shares of stock in a corporation does not prevent the corporation from recovering the balance due on a loan to the corporation. In making this argument, the corporation relies primarily upon *W.D. Miller Lumber Corp. v. Miller,* 225 Ore. 427, 357 P.2d 503, 100 A.L.R.2d 376 (1960), where the court held that ownership of all except qualify-

---

[2]The corporation directs us to *Hill Syrup Co. v. Marine Nat'l Bank* 128 Wash. 509, 223 P. 595 (1924), for the proposition that a corporation cannot ratify a contract and be subject to an estoppel when there is no benefit to the corporation, but this case was overruled and an estoppel found on rehearing, 133 Wash. 283, 233 P. 668 (1925). *See also Hill Syrup Co. v. Frederick & Nelson,* 133 Wash. 155, 233 P. 663 (1925). The corporation also cites *Western Fin. Corp. v. Morris,* 168 Wash. 698, 12 P.2d 932 (1932), for the general rule that funds taken by the officer or director which are not devoted to any corporate purpose can be recovered by the corporation from the stockholder.

ing shares of stock of the corporation did not of itself justify disregarding the separate legal identity of a corporation to prevent the estate of the deceased sole stockholder from liability for a balance owing the corporation. The court noted that Miller, the deceased sole shareholder, had kept a careful record of his obligation to the corporation and that there was other evidence of his intent to repay advances from the corporation.

██ Although it cannot be doubted that a corporation's separate legal identity is not lost merely because all of its stock is held by the members of a single family or by one person and thus the fact of sole ownership does not *of itself* immunize a sole shareholder from liability to the corporation, it is just as firmly established that the corporate entity will be disregarded when justice so requires. In F. O'Neal, *Close Corporations* § 1.09a (1971), the author states at page 33:

> In spite of a general adherence in theory to the notion that a corporation—whether close or publicly held—is a legal entity, courts frequently disregard a corporation's separate personality. As has often been stated, the separate personality of a corporation (and apparently this holds true whether the corporation is close or publicly held) will be disregarded or "pierced" whenever the corporate form is employed to evade an obligation, circumvent a statute, perpetrate a fraud or crime, or gain an unjust advantage or commit an injustice. Undoubtedly the likelihood that a court will disregard a corporation's legal personality in a particular situation is considerably greater if the corporation is close than if it is publicly held.

(Footnotes omitted.) *See* Latty, *A Conceptualistic Tangle and The One-or Two-Man Corporation,* 34 N.C. L. Rev. 471 (1956). For a detailed discussion of the circumstances in which the corporate entity will be disregarded, see W. Fletcher, *Private Corporations* §§ 41-47 (perm. ed. 1974) (hereinafter cited as "W. Fletcher"), and Horowitz, *Disregarding the Entity of Private Corporations,* 14 Wash. L. Rev. 285 (1939).

■    Here, as previously noted, the trial court found that all parties understood at the time the contract for the purchase of stock was signed that the payments probably would come from the earnings of the business distributed to the DeHarts.[3] Moreover, it is undisputed that at the time the contract was executed Clausing and Deer were the sole owners of the corporate stock. It is also unchallenged that after execution of the contract the payments from corporate funds were approved and ratified by all of the shareholders of the corporation, namely, the DeHarts. We are of the opinion that to permit the corporation to recover the amount of such payments from the DeHarts on the theory of misappropriation of corporate funds would be to require us to close our eyes to the realities of the situation. An award in favor of the corporation in the amount of the corporate funds previously paid to Clausing and Deer, who are now the present owners of the corporation, would amount to a double recovery. A corporation's separate identity cannot be preserved at the expense of fostering an obvious injustice; however, in this case, it is not necessary to disregard the corporate entity in order to uphold the trial court because the record reveals that the trial court's findings are supported by substantial evidence.

■    The court below properly found that the disbursements of corporate assets to Clausing and Deer were ratified by all of the shareholders and therefore the challenged transactions are governed by the general rule that limitations on corporate action can be waived by informed and unanimous consent by corporate shareholders. *See State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.,* 64 Wn.2d 375, 391 P.2d 979 (1964); *Kane v. Klos,* 50 Wn.2d 778, 314 P.2d 672 (1957); *In re Kitsap-Mason Dairymen's Ass'n,* 6 Wn.

---

[3]It is also notable that the contract, as the court stated in finding of fact No. 4, in part, included "a provision authorizing the DeHarts to liquidate the corporation if they chose."

App. 926, 497 P.2d 604 (1972). As is stated in W. Fletcher § 1104 at page 725:

> If all the stockholders of a corporation consent, and it is not detrimental to creditors, officers may appropriate corporate assets. It follows that if there are no stockholders except the directors and officers, the latter may, of course, by unanimous consent, give away corporate property, where the rights of creditors are not impaired.

(Footnotes omitted.) *Miller's Shoes & Clothing v. Hawkins Furniture & Appliances, Inc.,* ...... Minn. ......, 221 N.W.2d 113 (1974); *Lake Park Dev. Co. v. Paul Steenberg Constr. Co.,* 201 Minn. 396, 276 N.W. 651 (1937). In the case at bar, there is no showing or claim that the rights of any creditors of the corporation were impaired. *See May v. Rudell,* 149 Wash. 393, 270 P. 1041 (1928). Clausing and Deer, who make no argument that the corporation's identity ought to be disregarded were only creditors of the DeHarts individually and not of the corporation. The rule governing the management of solely-owned corporations which we apply here is stated as follows in W. Fletcher at page 724:

> If an officer is the owner of all the stock of a corporation, it seems that he may use the corporate assets as he sees fit, and there can be no misappropriation of corporate assets by him; but if there is even one share of stock outstanding he cannot use the corporate assets to pay his individual debts without the consent of the holder of such one share of stock.

(Footnotes omitted.) *See Cunningham v. Jaffe,* 251 F. Supp. 143 (D.S.C. 1966); *Real Estate Capital Corp. v. Thunder Corp.,* 31 Ohio Misc. 169, 287 N.E.2d 838 (1972); *Brown v. McClure Newspaper Syndicate,* 183 Pa. Super. 316, 130 A.2d 721 (1957); *MacQueen v. Dollar Sav. Bank Co.,* 133 Ohio 579, 15 N.E.2d 529 (1938).

We conclude that the trial court did not err in declining to hold the DeHarts liable to the corporation for installment payments made with corporate assets to Clausing and Deer. Similarly, as to the claim that the DeHarts are liable

for the transfer of the Southside Receivable, the trial court's unchallenged finding of fact No. 8 states:

The contract for the sale of stock was executed by all parties to this action, including Nursing Home Building Corporation. It provided that an asset of the corporation, known as the Southside Receivable and worth approximately $29,099.00 would be assigned to Drs. Clausing and Deer and not later than January 1971, and earlier if the corporation was dissolved. The corporation approved this contract at a time when Drs. Clausing and Deer were the sole shareholders and were a majority of the Board of Directors. The contract was assigned in April 1970. All parties consented to and ratified that assignment by their execution of the contract and by their subsequent acts in assigning or accepting assignment of the receivable.

The trial court properly concluded that the ratification of this transaction by all parties in accordance with the stock purchase contract is binding on the corporation.

■ Directing our attention to the second category of alleged "fraudulent misappropriation," the corporation asserts that such expenditures as management fees to the DeHarts, leased automobiles, and miscellaneous fringe benefits amounted to a waste of corporate assets and that the DeHarts failed to sustain the burden of proving that the expenditures were made in good faith. We disagree. Courts are reluctant to interfere with the internal management of corporations and generally refuse to substitute their judgment for that of the directors. *See Sanders v. E-Z Park, Inc.*, 57 Wn.2d 474, 358 P.2d 138 (1960). The "business judgment rule" immunizes management from liability in a corporate transaction undertaken within both the power of the corporation and the authority of management where there is a reasonable basis to indicate that the transaction was made in good faith. An excellent statement of the "business judgment rule" is found in W. Fletcher § 1039 at pages 621-25:

It is too well settled to admit of controversy that ordinarily neither the directors nor the other officers of a corporation are liable for mere mistake or errors of judg-

ment, either of law or fact. In other words, directors of a commercial corporation may take chances, the same kind of chances that a man would take in his own business. Because they are given this wide latitude, the law will not hold directors liable for honest errors, for mistakes of judgment, when they act without corrupt motive and in good faith, that is, for mistakes which may properly be classified under the head of honest mistakes. And that is true even though the errors may be so gross that they may demonstrate the unfitness of the directors to manage the corporate affairs. This rule is commonly referred to as the "business judgment rule."

(Footnotes omitted.) *See also* H. Henn, *Law of Corporations* § 242 (1970).

In this connection, the trial court entered detailed findings of fact which are not disputed and state as follows:

Mr. and Mrs. DeHart were experienced in the operation of businesses of various types, including nursing home. Both were involved in the day-to-day management of Arden Nursing Home on a full-time or greater than full-time basis; most of the time they were in possession of Arden Nursing Home. Each was licensed by the State of Washington as nursing home administrators. Each performed a variety of duties and responsibilities in addition to the day-to-day management.

Finding of fact No. 5.

Mr. and Mrs. DeHart each received a management fee of $1,000.00 a month, plus certain fringe benefits such as a leased car, car operation expenses and key man life insurance. The cars were used predominantly for corporate purposes. The DeHarts used credit cards for such items as lunch conferences with staff, for entertainment of doctors and nurses who might refer patients to Arden. While some of these expenses may not have been necessary or wise in retrospect, all of these expenses were reasonable expenditures for proper business purposes.

Finding of fact No. 6. As we have noted previously, finding of fact No. 12 states:

All other disbursements presented to the Court were proper business expenses.

This finding, though disputed, is properly supported by substantial evidence and must be upheld. The quoted findings support the trial court's conclusion of law that the challenged expenditures were made by the DeHarts within the scope of the proper exercise of their business judgment. This is especially so in view of the unchallenged finding of fact No. 16 which states:

There is no evidence of any fraud or conspiracy to remove corporate assets wrongfully.

The corporation's third major argument centers upon the DeHarts' failure to pay federal withholding taxes and social security contributions which had accumulated to a sum in excess of $20,000 by the time the DeHarts' ownership of the corporation was forfeited. Again, the "business judgment rule" is controlling. Phoebe DeHart explained why the taxes were not paid in her testimony at trial, stating in part:

We did not have the funds to pay them. We were using the money for food and heat and light, for patient care.

The trial court specifically found:

The funds which would have been used for taxes were applied to other business expenses, such as staff salaries and trade accounts necessary to keep the nursing home open and provide patient care.

Finding of fact No. 14, in part. This finding of fact, though challenged, is supported by substantial evidence and therefore must be sustained. Thus, the trial court was entitled to conclude that the use of corporate funds for the payment of expenses other than taxes constituted a valid exercise of business judgment with which the courts will not interfere in the absence of bad faith or fraud. There was no error.

In view of our disposition of this appeal, we do not reach the questions presented by the cross-appeal.

Judgment affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied September 29, 1975.

Review denied by Supreme Court November 12, 1975.