[No. 10825–5–I.   Division One.   December 15, 1982.]

ROBERT L. SCHWARZMANN, ET AL, *Appellants*, v.
ASSOCIATION OF APARTMENT OWNERS OF
BRIDGEHAVEN, ET AL, *Respondents.*

*Carolyn J. Hayek* and *Steven M. Rosen,* for appellants.

*Leslie K. Lynch,* for respondents.

DURHAM, A.C.J.—Robert and Eleonore Schwarzmann appeal an order granting defendants' motion for partial summary judgment and dismissal of claims, and denying the Schwarzmanns' motion for reconsideration. This case addresses the individual liability of members of the condominium board of directors for damages to the condominium unit of the Schwarzmanns, as well as for medical and emotional injuries allegedly incurred by them. Plaintiffs' claims against the condominium association remain unaffected by this decision.

In 1971, the Schwarzmanns purchased a unit in the Bridgehaven condominium in Seattle and have resided there since December of that year. Bridgehaven Association is an unincorporated association with a 7–member Board of Directors (Board). The Association and the Board are responsible for the maintenance and repair of common areas of the condominium. These common areas include portions of the building outside the interior surfaces of the perimeter walls, floors, ceilings, windows and doors of the individual apartment units. Roof and attic areas above the individual units are part of the common areas.

In November 1978, spots appeared in the Schwarzmanns' ceiling. They reported this at the December 6, 1978 board meeting. Several days later, the Board sent building chairman Nick Buono to look at the spots. At that time, the

Schwarzmanns noticed additional spots on their ceiling.

On December 31, 1978, water leaked from the Schwarzmanns' ceiling onto their furniture and carpet. In response to this, the Board had a representative of Evergreen Roofing Company inspect the problem on January 2 and January 5, 1979. Evergreen, which had re-roofed all the Bridgehaven buildings the previous fall, determined that the Schwarzmanns' problem was caused by condensation occurring in the attic area over the Schwarzmanns' unit.

The Schwarzmanns presented their problem at the annual meeting of the Association on January 8, 1979. The condominium owners instructed the Board to hold an emergency meeting to consider the situation. Three days later, Buono arrived at the Schwarzmanns' unit with a representative from the Cooper Mechanical Company. He concluded that the water problem was not caused by the heating system, the air cleaner, or any condensation from inside the unit.

The Schwarzmanns then hired Northwest Inspection Engineers. An inspector traced the source of the water problem to generally improper ventilation in the attic space over the Schwarzmanns' unit. A copy of his report was sent to the Board on January 17, 1979.

Unsatisfied with lack of action by the Board, the Schwarzmanns had their attorney send a demand letter to the Association on January 31, 1979. On February 14, 1979, Board president McKinstry sent a letter to the Schwarzmanns stating that the Board would not accept responsibility for the water problem, for the following reasons:

The roof does not leak.

There is ample ventilation in the "attic" areas above the bedrooms, utility room and kitchen.

The venting has functioned well for over seven years.

All cathedral ceilinged units at Bridgehaven have the same type of insulation.

No other similar unit at Bridgehaven has suffered any appreciable damage.

No other owner has the type of heat you have installed.

Furthermore, the Board believed that the Schwarzmanns' problem was caused by the condensation of moist air compounded by unusually cold weather.

On March 5, 1979, the Schwarzmanns distributed a letter to Bridgehaven residents seeking their aid in obtaining corrective action by the Board. Pursuant to a special meeting, on March 19, 1979 the Board sent a ventilation installer and three residents to further inspect and evaluate the water problem. The installer reported that the toilet and exhaust systems had been installed correctly and that "[i]f there is a problem of sweating or moisture it must be caused by something other than the existing exhaust systems".

The Schwarzmanns' attorney sent a second demand letter to the Board on March 30, 1979, requesting corrective action within 30 days. The Schwarzmanns apparently did not receive a satisfactory response, and brought this action in June 1979. They sought damages for the diminished use of their unit, the interference caused to their daily lives, and the pain, suffering, medical fees, and costs which were exacerbated by the above. The Schwarzmanns also sought a variety of equitable relief.

The trial court dismissed the Schwarzmanns' claims as to all individual defendants and granted summary judgment of dismissal against the Schwarzmanns' claims for emotional and medical damages.

The Schwarzmanns first claim that the trial court erred by granting summary judgment of dismissal to all the individually named defendants. The issue of personal liability of a member of a condominium board of directors is one of first impression in this state.

Although there is no case law directly on point, RCW 64.32.240 and the corporate "business judgment rule" are closely related. RCW 64.32.240 is part of the Horizontal Property Regimes Act, RCW 64.32, and states, in pertinent part:

Actions relating to the common areas and facilities for damages arising out of tortious conduct shall be main-

tained only against the association of apartment owners and any judgment lien or other charge resulting therefrom shall be deemed a common expense, which judgment lien or other charge shall be removed from any apartment and its percentage of undivided interest in the common areas and facilities upon payment by the respective owner of his proportionate share thereof based on the percentage of undivided interest owned by such apartment owner.

The Schwarzmanns assert that this provision was enacted to alleviate difficulties faced by plaintiffs who might want to sue unincorporated associations of condominium owners. They argue that such potential plaintiffs would face procedural problems initiating a suit; *i.e.,* they would have to sue every member of a condominium development individually. Therefore, the Schwarzmanns contend, the Legislature included RCW 64.32.240 simply to facilitate lawsuits against condominium associations, rather than to bar actions by individual condominium owners against individual board members.

■■ No legislative history or case was suggested or independently found which supports this statutory interpretation. Absent a showing that a literal reading of a statute is obviously contrary to legislative intent, the language of a statute should be followed. *Hatfield v. Greco,* 87 Wn.2d 780, 557 P.2d 340 (1976). Additionally, words in common usage should be given their plain and ordinary meaning. *Washington ex rel. Edwards v. Heimann,* 633 F.2d 886, 891 (9th Cir. 1980). RCW 64.32.240 mandates that "[a]ctions relating to the common areas and facilities for damages arising out of tortious conduct shall be maintained *only* against the association of apartment owners". (Italics ours.) Nothing in this statute suggests that tort actions may also be brought against individual association members.

■ Irrespective of our reading of RCW 64.32.240, the Board members' actions nonetheless fell within the parameters of the "business judgment rule." In *Nursing Home Bldg. Corp. v. DeHart,* 13 Wn. App. 489, 498–99, 535 P.2d 137 (1975), we explained that:

Courts are reluctant to interfere with the internal management of corporations and generally refuse to substitute their judgment for that of the directors. *See Sanders v. E–Z Park, Inc.,* 57 Wn.2d 474, 358 P.2d 138 (1960). The "business judgment rule" immunizes management from liability in a corporate transaction undertaken within both the power of the corporation and the authority of management where there is a reasonable basis to indicate that the transaction was made in good faith. An excellent statement of the "business judgment rule" is found in W. Fletcher § 1039 at pages 621–25:

> It is too well settled to admit of controversy that ordinarily neither the directors nor the other officers of a corporation are liable for mere mistake or errors of judgment, either of law or fact. In other words, directors of a commercial corporation may take chances, the same kind of chances that a man would take in his own business. Because they are given this wide latitude, the law will not hold directors liable for honest errors, for mistakes of judgment, when they act without corrupt motive and in good faith, that is, for mistakes which may properly be classified under the head of honest mistakes. And that is true even though the errors may be so gross that they may demonstrate the unfitness of the directors to manage the corporate affairs. This rule is commonly referred to as the "business judgment rule."

(Footnotes omitted.) *See also* H. Henn, *Law of Corporations* § 242 (1970).

While *DeHart* did not involve a condominium board of directors, these same principles have been applied to the governing bodies of condominiums elsewhere. *See Rywalt v. Writer Corp.,* 34 Colo. App. 334, 526 P.2d 316 (1974); *Papalexiou v. Tower W. Condominium,* 167 N.J. Super. 516, 401 A.2d 280 (1979); *see also* Comment, *Judicial Review of Condominium Rulemaking,* 94 Harv. L. Rev. 647, 663–66 (1981).[1]

---

[1]More recently, the "business judgment rule" was codified in RCW 23A.08-.343. It provides:

"A director shall perform the duties of a director, including the duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the

■ Like their corporate counterparts, condominium directors have a fiduciary responsibility to exercise ordinary care in performing their duties and are required to act reasonably and in good faith. *Papalexiou,* 401 A.2d at 286. The trial court found no evidence of bad faith or improper motive which would demonstrate that the board members breached a duty owed to the plaintiffs. Nor do we find any such evidence. Absent a showing of fraud, dishonesty, or incompetence, it is not the court's job to second–guess the actions of directors. *Papalexiou.*

■ Plaintiffs also urge this court to "pierce the corporate veil" of the condominium association, in order to find the board members individually liable. This is only appropriate where an officer or director commits or condones a wrongful act in the course of carrying out his duties, *see Johnson v. Harrigan–Peach Land Dev. Co.,* 79 Wn.2d 745, 489 P.2d 923 (1971); *see also State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 322, 553 P.2d 423 (1976), *dismissed,* 430 U.S. 952, 51 L. Ed. 2d 801, 97 S. Ct. 1594 (1977), and a lack of good faith can be shown. *See Olympic Fish Prods., Inc. v. Lloyd,* 93 Wn.2d 596, 599, 611 P.2d 737 (1980); *see generally* Harris, *Washington's Doctrine of Corporate Disregard,* 56 Wash. L. Rev. 253 (1981). Once again, there is a lack of substantial evidence that any

corporation, and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

"In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by:

"(1) One or more officers or employees of the corporation whom the director believes to be reliable and competent in the matter presented;

"(2) Counsel, public accountants, or other persons as to matters which the director believes to be within such person's professional or expert competence; or

"(3) A committee of the board upon which the director does not serve, duly designated in accordance with a provision in the articles of incorporation or bylaws, as to matters within its designated authority, which committee the director believes to merit confidence; so long as, in any such case, the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted."

of the individually named defendants acted in bad faith, or somehow knowingly participated in or condoned wrongful or negligent conduct.

The Schwarzmanns next assign error to the dismissal of their claim for emotional distress damages. They claim that the Board's refusal to take any action to remedy their water problem was an intentional interference with their property rights. They additionally maintain that damages should be allowed for the negligent infliction of emotional distress.

■ This state has indeed recognized that damages for inconvenience, discomfort and mental anguish may result from an intentional interference with property interests. *Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 564 P.2d 1137 (1977) (intentional interference with business expectancy). Such interference, however, must be more than "incidental." There must be evidence adequately establishing that the underlying motive for the interferor's breach involved considerations outside the scope of obligations under an existing agreement. *Cherberg,* at 605. Addressing the issue of possible damages resulting from a breach of contract, this court has explained that:

> Damages for mental suffering . . . are not recoverable in such an action unless the breach was wanton or reckless and the defendant would have reason to know, when the contract was made, that a breach would cause mental suffering for reasons other than pecuniary loss. Restatement of Contracts § 341 (1932). *Cf. Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 564 P.2d 1137 (1977).

*Cooperstein v. Van Natter,* 26 Wn. App. 91, 99, 611 P.2d 1332 (1980).

Our review of the record on appeal reveals no evidence of ill motive or recklessness on the part of the Board. The Board merely exercised its discretion, as duly elected administrators of the condominium. A party is not liable for damages for emotional distress when it had a legal right to act as it did. *Bowe v. Eaton,* 17 Wn. App. 840, 843–44, 565 P.2d 826 (1977).

■ As for plaintiffs' claim of negligent infliction of emo-

tional distress, this case is clearly not within the guidelines of the leading Washington cases. In *Hunsley v. Giard,* 87 Wn.2d 424, 435, 553 P.2d 1096 (1976), the Supreme Court found that "[t]he element of foreseeability plays a large part in determining the scope of defendant's duty." In *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 962, 577 P.2d 580 (1978), the court held that "the confines of a defendant's liability are now measured by . . . negligence theory, *i.e.,* foreseeable risk, threatened danger, and unreasonable conduct measured in light of the danger." There is no evidence in the record which contradicts the trial court's finding on a lack of foreseeability. Nor have the Schwarzmanns demonstrated that the Board of Directors acted unreasonably in how they handled the water problem.

A summary judgment should be upheld only if there are no genuine issues of material fact and if the prevailing parties are entitled to judgment as a matter of law. *Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 152, 570 P.2d 438 (1977). The trial court's oral decision indicates that it gave thorough consideration to all facts which might favor plaintiffs' position and found there to be no genuine issues of material fact. We agree. The trial court's use of summary judgment was appropriate in this case.

We affirm.

CALLOW and SCHOLFIELD, JJ., concur.