SEAFIRST CORPORATION, Plaintiff,

v.

William M. JENKINS, et al.,
Defendants.

No. C83–771R.

United States District Court,
W.D. Washington.

June 20, 1986.

See also, D.C., 644 F.Supp. 1160.

Stephen V. Bomse, Eric Redman, Robert Rosenfeld, Matthew Larrabee, Heller, Ehrman, White & McAuliffe, Seattle, Wash., San Francisco, Cal., for Seafirst.

Stevan D. Phillips, Deborah A. Elvins, Jones, Grey & Bayley, Seattle, Wash., Luke D. Lynch, Jr., D'Amato & Lynch, New York City, for National Union.

Steven B. Frank, Seattle, Wash., Daniel W. Krasner, Fred T. Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Sherrie R. Savett, Berger & Montague, Philadelphia, Pa., Richard D. Greenfield, Greenfield, Chimicles, Haverford, Pa., Chris R. Youtz, Sirianni & Youtz, Seattle, Wash., for class plaintiffs.

William Lerach, San Diego, Cal., Alan Schulman, Milberg, Weiss, Bershad, Specthrie & Lerach, John Braislin, Betts, Patterson & Mines, Seattle, Wash., for Nayes.

T. Dennis George, Laurie Kohli, George Hull & Porter, Seattle, Wash., for Jaehning.

Allan H. Baris, Merrick, Hofstedt & Lindsey, Seattle, Wash., for John Nelson.

Richard E. Keefe, Foster, Pepper & Riviera, Seattle, Wash., for Curtis.

Evan L. Schwab, Davis, Wright & Jones, Seattle, Wash., for Seafirst, Carter, Anderson, Gering, A. Nelson & Gillis.

William A. Helsell, Ragan Powers, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for Jenkins.

Robert D. McLean, Sidley & Austin, Chicago, Ill., Richard M. Clinton, Lucy P. Isaki, Bogle & Gates, Seattle, Wash., for Arthur Andersen & Co.

J. Ronald Sim, Schweppe, Krug & Tausend, Seattle, Wash., for John Boyd.

J. Vernon Williams, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for McGregor, Stroum, Therpe, and Webster.

## ORDER DENYING DEFENDANT ARTHUR ANDERSEN'S MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Judge.

THIS MATTER comes before the court on a motion by defendant Arthur Andersen & Co. for summary judgment. Having reviewed the motion together with all pleadings submitted in support of and in opposition to it, and being fully advised, the court finds and rules as follows:

## I. INTRODUCTION

Plaintiff Seafirst Corporation ("Seafirst") brought suit against the accounting firm of Arthur Andersen & Co. ("Andersen") on the grounds that Andersen had breached its duty to Seafirst by conducting negligent audits of Seafirst's financial statements in 1980 and 1981. The basic issues raised are, therefore, whether Andersen violated its duty of professional care in connection with those audits and, if so, whether the violations proximately caused Seafirst's asserted damages.

Andersen now moves for summary judgment dismissing Seafirst's complaint against it.

## II. STANDARD OF CARE

Both parties agree that the standard of care to which an auditor is held is compliance with generally accepted auditing standards ("GAAS"). *Securities & Exchange Commission v. Arthur Young & Co.*, 590 F.2d 785, 788 (9th Cir.1979); *Matter of*

*Hawaii Corp.,* 567 F.Supp. 609, 617 (D. Hawaii, 1983). GAAS are promulgated by the American Institute of Certified Public Accountants ("AICPA"), which also issues interpretations of the general standards deemed authoritative in the profession.[1]

## III. CHALLENGE TO GENERAL THEORIES OF LIABILITY

Seafirst posits two general theories pursuant to which Andersen should be held liable for damages. Andersen argues that neither one stands up to factual or legal inspection.

### 1. *Internal controls theory*

Under this theory, Seafirst contends that, in performing both its 1980 and 1981 audits, Andersen had a professional duty to bring to the attention of the Seafirst Board of Directors ("the Board") the existence of certain material weaknesses in Seafirst's internal controls which allegedly allowed loans to be made without proper approval and without sufficient supporting documentation.[2] Seafirst further contends that, as a result of Andersen's negligent failure to advise the Board of these material weaknesses, the Board was not adequately informed of the seriousness of the problems and did not take any steps to correct the weaknesses, thereby causing Seafirst to suffer loan losses.

Andersen attacks this theory on several grounds. First, it argues that Andersen did inform Seafirst of the problems. It bases this contention on two memoranda, known as blue-backs because of their binding, in which Andersen discussed problems and made recommendations concerning Seafirst's internal controls, and which Andersen provided to Seafirst at the close of the 1980 audit.

Seafirst responds that the discussion to which Andersen points was buried in a document addressing a host of other concerns and that, more importantly, it only dealt with one minor aspect of weak internal controls on disbursement of loan funds by phone. According to Seafirst, the much more critical issues of flawed internal controls regarding loan approval and documentation were not even mentioned. Furthermore, Andersen informed the Board both orally and in writing that its examination had revealed *no* material weaknesses in internal controls. In the court's opinion, there is clearly an issue of fact concerning the adequacy of the notice which Andersen gave.

Second, Andersen acknowledges that, pursuant to GAAS, it was obliged to bring to the attention of Seafirst any material weakness in internal controls which it discovered in the course of its audit. Andersen also does not dispute that it was aware of the internal control problems on which Seafirst focuses. But Andersen contends that those problems were not "material weaknesses" within the meaning of that term as used in the auditing profession.

In response, Seafirst submits the declaration of Vincent Love, who is offered as an expert witness on the subject of accounting standards and who contradicts Andersen's position. Andersen does not contest Mr. Love's qualification as an expert, but instead argues that the interpretation of the GAAS on the meaning of material weakness is a matter of law. The court concludes that, in light of Mr. Love's expert opinion contradicting Andersen's contention, there does exist a factual issue which clearly renders summary judgment on this issue inappropriate.

Andersen's third and final argument for summary judgment on the internal controls

---

**1.** Seafirst also argues that Andersen should be held to an even higher standard because it held itself out as a specialist, but it is not necessary to address that issue in order to decide Andersen's motion for summary judgment.

**2.** According to the AICPA literature, internal accounting controls include all of those policies and procedures which a company adopts to safeguard its assets and to ensure the reliability of its financial records. *AICPA Professional Standards,* AU § 320.27–28, The Auditor's Study and Evaluation of Internal Control (New York: AICPA, (1972)).

theory addresses the issue of causation. Andersen contends that, even if it had an obligation to inform Seafirst about internal control problems and failed to do so, Seafirst was already aware of them as a result of investigations performed by its internal auditors. Andersen stresses that Seafirst did in fact undertake to install stronger controls in 1981 as a result of internal audit recommendations. Therefore, Andersen argues, its failure to inform Seafirst could not be the cause of damages suffered because Seafirst already knew everything which Andersen would have revealed.

Seafirst admits that certain people did know about the problems, including Seafirst management and defendant William Jenkins, then chief executive officer of Seafirst and a member of the Board. But, according to Seafirst, the more crucial fact is that Seafirst's Board as a whole was not made aware of the seriousness of the situation and thus did not take any action to correct the problems. In supporting declarations, two Board members at the time, Kate Webster and Samuel Stroum, state that if Andersen had brought to their attention the inadequacy of controls over disbursement of funds, "[they are] sure that the [Audit and Examining] Committee [3] and Board would have taken immediate steps to correct these significant shortfallings."

■ In other words, Seafirst asserts that it hired Andersen for the specific purpose of informing the Board of material weaknesses in its internal controls and that there is a significant difference between recommendations of internal auditors, which were not couched in strong terms, and a report from an independent auditor indicating the existence of serious deficiencies warranting immediate attention. The court agrees with Seafirst that the causal link, if any, between Andersen's. alleged failure to report the existence of material weaknesses in internal controls to the Board and loan losses suffered by Seafirst

is an issue which the trier of fact must decide.

### 2. *Qualified opinion theory*

Regarding Andersen's 1981 audit, Seafirst also contends that Andersen was negligent in failing to examine enough competent evidential matter during the course of that audit to evaluate the adequacy of Seafirst's loan loss reserve. According to Seafirst, if Andersen had complied with GAAS, it would have realized that sufficient competent evidential matter did not exist at the end of 1981 to permit evaluation of the collectability of the many loan participations which Seafirst's Energy Department purchased during the last two months of 1981. If Andersen had realized that it lacked crucial information to complete its audit, it would have had to issue a qualified opinion to the Board. The Board would then have been required to investigate the problems in the Energy Department. According to the declarations of Board members Webster and Stroum, the Board would in all likelihood have suspended future energy lending until the problems had been fully identified and corrected. Therefore, Seafirst seeks to hold Andersen liable for all losses suffered on Energy Department loans made after January 1, 1982, the date on which the lending moratorium allegedly would otherwise have been imposed.

Andersen challenges this theory on grounds of causation. It contends that, whatever the quality of its work on the 1981 audit, any failure on its part could not have been the cause of Seafirst's losses on energy loans made in 1982 because, despite Andersen's issuance of an unqualified audit opinion to the Board, Seafirst management imposed an energy lending moratorium effective at the beginning of 1982. If Seafirst nevertheless chose to ignore its own policies after that date, then Andersen cannot be held accountable for that failure.

---

**3.** The Audit and Examining Committee of the Board on which both Webster and Stroum sat was charged with overseeing the internal auditing function of the bank and reviewing reports

from the National Bank Examiners and independent auditors concerning bank operations, including evaluations of the adequacy and effectiveness of internal controls.

■ Seafirst admits that a moratorium was imposed on new energy lending and that, despite the prohibition, some $150 to $200 million in loan funds were disbursed after January 1, 1982. However, Seafirst again stresses the difference between actions which were taken as a result of internal audits and generalized concern about the practices of the Energy Department, and actions which would have been taken in response to a qualified opinion by an external auditor. Seafirst argues that the issuance of a qualified opinion would have been perceived as very serious and would have required action by Seafirst's Board, not only by Seafirst management. Seafirst also points out that most of the people charged with imposing and enforcing the lending moratorium in 1982 were the ones allegedly responsible for creating the conditions leading to its imposition. The court agrees with Seafirst that the issue of causation raised by Seafirst's qualified opinion theory of liability must be decided by the trier of fact.

## IV. CHALLENGE TO LIABILITY FOR INDIVIDUAL LOANS

Andersen also contends more specifically that summary judgment is appropriate on Seafirst's claims for damages as to nine individual loans on the grounds that Seafirst cannot prove causation because there are no documentation or approval problems with those loans. Because the losses suffered on those loans have no connection to the weak internal controls on loan approval and documentation which Seafirst blames Andersen for not revealing in its audits, Andersen argues, it cannot be held responsible for the losses.

Seafirst has now withdrawn two of the nine loans from contention. Of the seven remaining, Seafirst alleges that two involve funds disbursed after January 1, 1982 and, therefore, are covered by its qualified opinion theory as well as its internal controls theory. Since the crux of the former theory is that *no* energy lending would have taken place after January 1, 1982, if Andersen had not been negligent, Seafirst argues that the quality of the individual loan files does not matter for purposes of proving causation. The court agrees that summary judgment is inappropriate on these two loans.[4]

As for the other five loans, Seafirst does not contest Andersen's assertion that the loans were properly documented and approved, although it does insist that they were highly risky. Instead, Seafirst argues that Andersen's negligence is still responsible for the losses on those loans because, if Andersen had pointed out the internal control problems, the Board could have addressed not only those problems but also the Energy Department's general failure to assess the creditworthiness of loan recipients. If better credit analysis procedures had been followed, then very risky loans by Andersen would not have been made. In their declarations, Webster and Stroum both state that, if the inadequacy of the internal controls had been brought to the Board's attention, the Audit and Examining Committee would not only have implemented stronger controls, but also that it "surely would have considered the need for management changes and the advisability of placing stringent limits on future growth of energy lending until the control problems had been rectified."

■ Andersen replies that its duty was simply to audit Seafirst's financial statements and that it cannot be held liable as an insurer of risks which Seafirst took in the exercise of its business judgment. The court finds that while Seafirst's theory of causation regarding losses suffered on the five pre–1982 loans is quite attenuated, there is some, albeit meager, factual sup-

4. Andersen contends that one of the loans to Hunt Energy was actually made before January 1, 1982, and thus does not fall within Seafirst's qualified opinion theory. The court hazards no opinion on this factual issue. Given the result reached concerning the inappropriateness of granting summary judgment on any of the individual loans selected by Andersen, the court need not determine which loans are covered by which of Seafirst's two general theories of liability.

port for it in the Stroum and Webster declarations. Therefore, the court concludes that the trier of fact must be allowed to consider it.

## V. ESTOPPEL

Andersen sets forth two theories of estoppel. One focuses on two letters from Seafirst to Andersen sent in early 1982 which contained formal representations regarding conditions in the bank. Andersen argues that Seafirst's Chairman of the Board, Chief Financial Officer and Controller all represented to Andersen that they were aware of no circumstances that would have a material effect on Seafirst's financial statements when, in fact, they were aware of certain conditions which they failed to disclose. Andersen contends that Seafirst is bound by its prior representations in that Andersen relied on them in determining the scope of its 1981 audit.

■ Seafirst responds that, according to the authoritative auditing literature, statements made in a representation letter do not relieve the auditor of the responsibility to perform an audit in keeping with GAAS. Thus, regardless of the contents of such a letter, the auditor must still perform all the tests and procedures necessary to afford a reasonable basis for issuing an opinion on the financial statements in question. The court agrees with Seafirst that Andersen cannot use statements contained in representation letters to estop Seafirst from suing Andersen for breach of its duty to perform audits in accordance with GAAS.

■ Andersen's second theory of estoppel focuses on various complimentary statements which Seafirst senior officers and Board members made concerning the quality of Andersen's audits. Andersen also stresses that it was rehired in both 1982 and 1983 to perform audits for Seafirst. This argument has no merit. While the statements may not be totally uninformed speculation, as Seafirst would characterize them, Andersen offers no evidence for concluding that they are the sort of authoritative pronouncements based on careful, fully knowledgeable scrutiny of

Andersen's work which might at least arguably serve as a basis for estoppel.

## VI. NONLIABILITY FOR BUSINESS DECISIONS

■ Andersen expands upon its policy argument that Seafirst should not be able to hold Andersen legally responsible for loan losses which resulted only from Seafirst's ill-fated exercise of business judgment. Andersen also seeks to reargue its position on the court's decision that Seafirst can invoke the attorney-client privilege with regard to documents sought by Andersen. *See* Order Granting Reconsideration of August 10, 1985. Neither argument affords any basis for granting summary judgment.

## VII. OFFSET ON DAMAGES

Finally, Andersen contends that if it is held liable for Seafirst's loan losses, it should also get credit for all profits made on loans issued during the same time period. Because Andersen does not offer any evidence to support its contention, the court will not consider it at this time. Andersen will be free to submit mitigating evidence if and when it becomes relevant.

## VIII. CONCLUSION

For the above-stated reasons, Andersen's motion for summary judgment is DENIED. The court finds that oral argument on this motion is not necessary.

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON THE BUSINESS JUDGMENT RULE

THIS MATTER comes before the court on motions by defendants Jenkins, Curtis and Jaehning for summary judgment. Defendants Boyd and Nelson have filed joinders in these motions. Having reviewed defendants' motions together with all pleadings submitted in support of and in opposition to the motions, and being fully advised, the court finds and rules as follows:

Plaintiff Seafirst Corporation ("Seafirst") sued defendants Jenkins, Curtis, Jaehning, Boyd and Nelson for negligent mismanagement, contending that their conduct as officers and directors of Seafirst and its subsidiary, Seattle-First National Bank, proximately caused Seafirst to incur large loan losses. Defendants now move for summary judgment on the grounds that the business judgment rule bars any claims for mismanagement against them. Plaintiff Seafirst Corporation ("Seafirst") responds that defendants' interpretation of the rule is incorrect and that summary judgment is inappropriate because genuine issues of material fact remain to be decided concerning the reasonableness of the defendants' conduct.

In order to resolve this matter, the court must determine the standard of care applicable to defendants' conduct together with the effect of the business judgment rule. The parties all agree that Washington law governs the result.[1]

For its part, Seafirst contends that RCW 23A.08.343, which was enacted in 1980, sets forth the appropriate standard of care:

A director shall perform the duties of a director, including the duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation, *and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.*[2] (emphasis supplied)

Defendants grudgingly acknowledge the existence of this statute and its relevance to the case, but prefer to emphasize the holdings in two recent Washington cases.[3] In *Nursing Home Building Corp. v. DeHart*, 13 Wn.App. 489, 535 P.2d 137 (1975), decided before the enactment of the statute on which Seafirst relies, plaintiff corporation sued the defendants, former sole shareholders of plaintiff, for fraudulent misappropriation of corporate funds. The appeals court upheld a decision for defendants pursuant to the business judgment rule, which it described as "[immunizing] management from liability in a corporate transaction undertaken within both the power of the corporation and the authority of management where there is a reasonable basis to indicate that the transaction was made in good faith." 13 Wn.App. at 498.

In *Schwarzmann v. Association of Apartment Owners of Bridgehaven*, 33 Wash.App. 397, 655 P.2d 1177 (1982), plaintiffs sued the members of a condominium board of directors. In finding that the board members' actions fell within the scope of the business judgment rule, the court relied on the reasoning of *Dehart, supra*. The court further stated:

The trial court found no evidence of bad faith or improper motive which would demonstrate that the board members breached a duty owed to the plaintiffs. Nor do we find any such evidence. Absent a showing of fraud, dishonesty, or

---

1. Despite this agreement, several of the parties feel compelled to discuss caselaw from other jurisdictions as well as a proposed formulation and analysis of the business judgment rule by the American Law Institute. Because the court finds Washington law quite clear, it will not consider the law of other jurisdictions.

2. Former RCW 23.01.360, which was repealed in 1965, was similar to RCW 23A.08.343: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

3. The one exception is defendant Jaehning, who argues that the statute is not applicable to him because it only concerns the duties of directors. Although he was both an officer and a director, he contends that it is his conduct in the former capacity which is under scrutiny here. Contrary to Jaehning's position, a respected authority on corporate law states that the duties and liability of officers and directors are measured by the same standard. 3A Fletcher Cyclopedia of the Law of Private Corporations § 1032 (Perm.Ed.1986). In any event, the court finds no precedent and Jaehning cites none for concluding that a corporate officer is held to a lesser standard than a director.

incompetence, it is not the court's job to second-guess the actions of directors. (cite omitted)

33 Wn.App. at 403.

Based on *DeHart* and *Schwarzmann*, defendants Jenkins and Curtis argue that, as long as they acted in good faith, they are immune from liability under the business judgment rule.[4] Seafirst responds that the two cases do not stand for that proposition and that the standard of care set forth in RCW 23A.08.343 is applicable.

■ Having carefully examined the cases on which defendants rely, the court must agree with Seafirst that proof of good faith alone is not sufficient to satisfy the business judgment rule. The language in *DeHart* is vague enough to admit of that construction, but lacks precedential value because the court did not squarely address the question. Moreover, as Seafirst points out, the authoritative treatise which the *DeHart* court quotes concerning the business judgment rule also states that "[t]he [business judgment] rule exempting officers of corporations from liability for mere mistakes and errors of judgment does not apply where the loss is the result of failure to exercise proper care, skill and diligence." 3A Fletcher Cyclopedia of the Law of Private Corporations § 1040, at 56 (Perm.Ed. 1986).

The court in *Schwarzmann*, while approving of the reasoning and decision in *DeHart*, also stated that it was not the court's role to second-guess the decisions of directors "absent a showing of fraud, dishonesty *or incompetence.*" (emphasis supplied) 33 Wn.App. at 403. Defendant Jenkins dismisses the emphasized language as "an inadvertent phrase." On the contrary, the court finds that the *Schwarzmann* court was deliberately referring to the standard of care with which directors must comply before the business judgment rule becomes applicable. *See id.* at 403 n. 1, where the court noted that since the ruling in *DeHart,* the business judgment rule had been codified in RCW 23A.08.343.

If, as the court concludes, the statutory standard of ordinary care is applicable, then clearly none of the defendants is entitled to summary judgment at this point.[5] Whether or not they exercised due care in the fulfillment of their responsibilities is a question which the trier of fact must decide.[6]

The court accordingly DENIES defendants' motions for summary judgment on the basis of the business judgment rule. In reaching this decision, the court has not considered or relied on the contents of any of the postmortem reports submitted by Seafirst in support of its opposition to defendants' motions. Therefore, the court STRIKES defendants' motions to strike postmortem reports with leave to renew if defendants wish to challenge the admissibility of these documents at trial.

IT IS SO ORDERED.

4. Defendant Jaehning does not assert that proof of good faith alone would prevent him from being held liable for mismanagement. Instead, Jaehning argues that Seafirst has failed to show any fraud, dishonesty or incompetence on his part as required by *Schwarzmann.* Defendants Boyd and Nelson have joined in the other defendants' motions, but have not submitted any separate memoranda. Their position is accordingly unclear.

5. The court briefly notes defendant Jenkins' argument that, even if RCW 23A.08.343 is applicable, he is still entitled to summary judgment because the statute also provides that in performing his or her duties, a director is entitled to rely on the work of others whom the director believes to be reliable and competent concerning the matter involved. Jenkins contends that

his conduct falls within the scope of this language. Unfortunately for Jenkins' argument, the statute clearly requires that reliance on anothers' work must also be based on reasonable inquiry and conform to the prudent person standard. In other words, the reliance provisions incorporate the standard of due care. The reasonableness of Jenkins' reliance is an issue for the trier of fact to decide.

6. Defendant Jaehning's argument in favor of summary judgment on the facts applicable to him carries more weight than the others' contentions because he measures his conduct against the proper standard of care. Nevertheless, the court must deny his motion because genuine issues of material fact remain to be decided concerning the reasonableness of his actions.